May it please the Court, my name is Laura Crank. I'm here for the appellant, Angel Rodriguez. This is a Social Security disability case. There's one issue. It's fairly straightforward. Did the judge provide clear incriminating reasons to reject Mr. Rodriguez's subjective pain testimony? It's our argument that he did not, that he isolated the record, only cited to some activities that Mr. Rodriguez could do. Well, he gave us reasons, right? I mean, he said he can do odd jobs. He likes to fix things. He does shopping. I mean, he gives reasons. Why aren't those reasons, you know, at least to him sufficient? Because this Court says that they're not. Why? Because an individual does not have to be utterly incapacitated in order to be disabled. A person has to be able to still live their life and activities that you can do at home when you have breaks in between and that you only do occasionally are not consistent with the grueling environment of competitive work. The ability to do an odd job once or twice a week for a half hour for a neighbor so that he can get food doesn't mean that he can work 40 hours a week. I think the judge also ignored other parts of the record that he found detracted from his credibility, like the fact that Mr. Rodriguez had attempted to find work actually enhances credibility. The record shows that Mr. Rodriguez has an impeccable work history since he was a teenager and worked his whole life until he was injured and couldn't work anymore. And he's trying to work and do something, but he can't. He has incapacitating days where he can't get out of bed for days at a time. He can't even handle going to the hospital to wait all day long to get treatment because he's in so much pain. He's able to do some things. He's able to walk on good days, but he has to take extra breaks just to walk a few blocks. None of these are inconsistent with his testimony. There's no inconsistencies in his testimony. The judge has to provide clear, convincing reasons to reject his testimony. I think that the record evidences a hard-working person who wants to work and has worked their whole life and is trying to work. They have this incapacitating back pain now. They have no access to medical treatment, and he can't work. He has no food. He has no money. He's living in his sister's house, but he's not even living there now. I really don't know what else he needed to say. He's a very honest person and said what he could and could not do. One of the problems here is almost because of his poverty. He had no treating doctor, essentially. Is that right? He had one after when he was first injured, and then he saw a chiropractor for a while, and now he does not have medical care. He has no access and can't afford it. He really didn't have any doctor in the record supporting his version of events, and he had several examining doctors who said otherwise. Is that an accurate view of the record? I would say so, Your Honor, but once the judge finds that he has a severe impairment that could be the source of his pain, then we're into the subjective pain analysis, and we don't even enter into the subjective pain analysis unless the allegations are in excess of what the medical record says. And so that's where we are. And so then we have to look at other factors. And he has to, I mean, he wakes up in the morning, he has 16 hours in every single day that he has to do something with, and just because he picks up his guitar once in a while and plays his guitar or eats something or tries to do something to pass the time, it doesn't mean that he's not disabled. The fact, again, that his work history and his testimony, it resonates with the fact that he wants to work. My overall impression of this case is that what is most wrong, the real problem is the statute. Here you have somebody who was a gardener for many years. He obviously cannot be a gardener. And the statute, however, is concerned only will give him disability if he can't do anything. He doesn't have the resources to find anything else to do. Somebody could dream up something else he could do, and they did that. And maybe he could do it if he could ever find a job. That seemed to me to be the real problem. Well, I actually think, Your Honor, that his testimony is consistent with that, and so is his attitude, that if he could find somebody that would accommodate his ability, like the fact that there's days, there's two days at a time where he can't even get out of bed, he has to crawl to the bathroom, and then he has days that are better where he can actually move around. If he was working for a family member or if he had to work for himself and he could have those types of accommodations, this is the type of person that would do that, that would want to work. You do have the vocational experts saying that the under those circumstances he actually couldn't have sustained work. I'm sorry, pardon? You did – I don't know if you – That had to do with actually the – with the mental limitations. And it seems like there needs to be further development in regards to what – if his testimony was credited as true. Yeah. I wondered about that. If a person was going to miss as many days of work per month as testified to by Mr. Rodriguez, if they needed as many unscheduled breaks as testified to by him, if he only lived 10 hours. I don't believe you that on certain days you can't do anything. I mean, did he respond to the actual assertions made, i.e., that I'm okay some days and terrible other days and some days – as opposed to simply saying, in general, I don't believe you? No, he did not. He decided to – the fact that he could do – that he could groom himself, that he could – that he played his guitar, that he did odd jobs for neighbors, and that he could walk. And I don't find those clear and convincing, especially in light of the fact of his honest testimony and his work history. There has to be something more, some kind of inconsistency, some reputation for dishonesty. I mean, I'm – this is the way the statute is written. This is the intent of the statute, is that we understand that there's going to be times when the objective evidence doesn't support it. So we have to look to is there something to detract from this person's credibility. It has to be clear and convincing reasons, and I don't think that the judge offered them. Well, he did have these doctors who said he could work – he could walk six hours a day and – Those doctors, those examinations are five-minute exams, and they just can't reflect what this person can do on a regular and continuing basis, especially in light of the fact that he testified that he has good days and bad days. Would you like to reserve some time for rebuttals? Yes, I would. Thank you. Thank you very much. Good morning. Good morning, Your Honor. Good morning, Your Honors. My name is Enrico Olis. I represent the appellee, the Commissioner of Social Security, Michael J. Astru. Your Honors, even if, as a judge, you can look at the same evidence and come up with an interpretation of the evidence that would suggest that the appellant is credible, the credibility findings of the ALJ should be sustained if they were a rational interpretation of the evidence. I mean, the one piece of his reasoning that seems clearly not to meet that standard is the fact that this man looked for work. I don't know how that proves anything about whether he didn't get it. So what does that prove about the fact that he could work? Your Honor, the reason why that is relevant in this case is because, by definition, somebody applying for disability benefits is saying that they cannot perform any substantial gainful activity by reason of their physical or mental impairments. And here, the fact that he had looked for work indicates that he had at least some belief he had good work ethic and he wanted to eat, and he would like to work, but that doesn't prove he could work. No, Your Honor, but what I think is important with the fact that he was looking for work is the fact that he was holding himself out as having the ability to perform some work. In fact, in his testimony during the administrative proceedings, he testified that he had applied for jobs, but really the issue with his application for jobs was opportunity. As he stated, employers would tend to shy away from him when they found out about his prior back injury, which was sustained at a prior employer. i.e., they didn't think he was able to work. Well, but again, Your Honor, the point is that he is holding himself out as being able to do the work. He saw the job. He applied for it. So on some level, he's holding himself out to the employers as having the ability to do that job. And that wasn't the only criteria that the ALJ looked at when looking at the credibility of this individual in the aggregate. As Your Honor had mentioned a little bit earlier, there is this lack of objective evidence to suggest impairments greater than what the ALJ had already found. It's true. What did the doctors say he could do? Well, his treating physician at one point, Dr. Rowe, said that he could lift 20 pounds. And that is inconsistent with the claimant's statement during the hearing that he could only lift 10 pounds. Two other examining doctors, Dr. Boyce and Dr. Yashroodi, they both examined him. I would disagree with the characterization by opposing counsel that this was simply a five-minute exam. These were comprehensive exams of his impairments. They looked at the medical evidence. They looked at X-rays as well. And both Dr. Boyce and Dr. Yashroodi determined that he could lift 50 pounds on an occasional basis and 25 pounds regularly. They also found that he could sit, stand, and walk for six hours out of an eight- hour day. On the mental impairment side, there was one examining psychiatrist who examined him at two different points in time. And both of his findings were consistent that this individual could perform simple work. So based on that medical evidence, again, coupled with the fact that he was looking for work and some of his other statements indicated to the ALJ that this person wasn't entirely credible with his allegation of disabling pain and mental conditions, some of the daily activities that the ALJ talked about was his ability to do household chores and his active or his hobby of fixing things. That's important because, again, as the opposing counsel mentioned, it's true. A claimant doesn't have to be completely incapacitated, but if their daily activities suggest that they are not as incapacitated as his. But his version of his impairment was that it is that there are several days out of the month that I can't do anything. So which I gather there's no dispute that if that's true, he wasn't going to be able to sustain a job. At the same time, the ALJ's findings were inconsistent with that because he could do all the things the ALJ said he could do and he could still be telling the truth, right? Because he didn't say I do odd jobs every day or I, right? So I don't see how that works. There are two points with that, Your Honor. The first point is it's true. It's possible that he can do some of these things only on a limited basis on some days when it's really good for him, but that's the whole point of why the ALJ has to do the credibility finding because that is a subjective comment. I never addressed that. That's what bothers me. He never said, I mean, he did this on a sort of gross basis, so he never actually addressed what the man was saying, which is, you know, I have this is the form of my impairment. He didn't deal with it. So I don't see how it's helpful to say that we defer to what he didn't deal with it. Well, Your Honor, I would suggest that he did. He did it with a very broad brush, granted. He said that he looked at he considered the subjective complaints, but it didn't warrant any further limitations than what he had found. But to address your other point about the actual daily activities, one of the issues, I think, for the ALJ is that this was a case about resources and opportunity. As I mentioned earlier, he just hadn't had the opportunity yet to find a job or get hired for a job. And by resources, he explained in his own report of daily activities that he could perform all household chores, he could perform household repairs, he could go grocery shopping, but he lacked the resources. He didn't say, I can't clean my house because I have such severe back pain. He said, I could perform all these household chores without assistance, but I just don't have the money to buy soap, cleaning solvents, and whatnot. It doesn't quite address Judge Berzon's question, though, that that's not inconsistent with any of his testimony. The fact that he can clean his house doesn't mean that he can clean his house every day over an eight-hour period. There are some days when he won't be able to clean his house and he won't be able to walk to the store. So how could he hold full-time employment? So how do we address that? I agree, Your Honor. That is true. But, again, that is the reason why we have to make a credibility determination, because it's going to be a rare case where we are going to have direct evidence. So the ALJ simply didn't believe that Mr. Rodriguez could not work for eight hours a day? Correct. Okay. And where is that finding? Well, again, it's in his determination that there are no additional limitations beyond those that he found, and by his finding that this person is not disabled under the statute. And, again, by definition, a person would only be disabled if they couldn't perform any substantial gainful activity. And just to sum up, Your Honors, again, it's perhaps looking at one particular fact is perhaps not as compelling. But when you look at it in the aggregate, this is really an individual that simply hasn't had the resources or the opportunity. But the limited medical evidence, his daily activities, his representation to employers that he could work, his comments to his treating physician that he was looking for a job, he just hadn't found one, those all belie an individual who is so disabled that they cannot perform any substantial gainful activity. I really find that argument, and it's something that's unusual about this case because I haven't seen this before, I mean, almost offensive because it gives preference to people who essentially don't want to work or aren't in as bad condition financially. And it says nothing coherent about whether he can work. It's aspirational. And it was just proven. Nobody would hire him. And he said no one would hire him because he was disabled, essentially. Well, they thought he was. I mean, isn't that what he was saying in the end? Well, certainly, Your Honor, we're not looking to punish anybody who is trying to find work. But that's how it comes across. I mean, because it doesn't seem to me to have any probative value. Did he say why he wasn't hired? The only clue we really have is from his hearing testimony where he said that the employers would tend to shy away from him when they found out about his prior injury. Did he specify what kind of jobs he was applying for? No, he didn't. At least that information is not clear from the record. So we don't know whether he was applying to be a dowel inspector or a bait packer as opposed to similar work to his gardening work? Correct, Your Honor. Thank you very much, Mr. Elyse. It is great back to you. I would just like to note that the commissioner encourages people, even disabled people, to work. That's why they have the unsuccessful work attempt where the person can try to return to work for up to nine months and still receive their benefits for five months. At any time during that period of time, if they feel they can't do the job, they just continue on their disability benefits. There's also an extended period of disability, which is 36 months after the person returns to work. For 36 months after they return to work, eventually after five months they stop receiving their benefits, but any time during that 36-month period they decide that they can't do that job anymore, they go right back on to the benefits. Also, disabled people work. The governor of New York is blind. Stevie Wonder is blind. Lots of people that are completely disabled are able to find work when they're highly educated or if they have accommodations. Mr. Rodriguez, it's not just that he didn't have resources so that he couldn't get a job. I mean, people find jobs that don't have any special resources. He has family and he has friends. There's no reason to think that he wouldn't be able to just go out to the corner store and get a job as a cashier just as easily as anybody else could or a job at Walmart. So it's to say that the only reason he's not getting a job or that he didn't get a job is because he lacked the resources to be able to do it. He's no different than anybody else. In fact, since he has such a good work history and he has such a good work ethic, he would probably have an easier time than anybody else. And one would like to submit just on that. Thank you very much, Ms. Crank. Mr. Elise, thank you. The case to the target is submitted. 0656626 and 56673, Biller v. Malvedac Productions.
judges: Silverman, Berzon, Bybee